[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel and proceeded on plaintiff's complaint dated August 11, 1993.
Having heard the evidence, the court finds as follows:
The plaintiff, whose maiden name was Benson, and defendant intermarried at Hanover, Connecticut, on July 27, 1968; that the plaintiff resided in the State of Connecticut for a period of twelve months next preceding the date of the filing of this complaint; that there are no minor children issue of the marriage; that the marriage has broken down irretrievably and that there is no hope of reconciliation; that the parties have two adult daughters issue of the marriage. All statutory stays having expired, this court has jurisdiction.
The parties had problems that existed for many years. There was a lack of communication with each other. On occasions during the marriage, the parties would argue, become unhappy with each other and indicate a divorce should take place. In 1985, although the defendant believed the marriage was over, he decided that he would not leave the plaintiff until their children had completed their education. The parties continued to live together as man and wife and engaged in sex with each CT Page 9441 other.
In February 1993, while plaintiff and defendant were engaged in sexual activity, plaintiff received a telephone call from the husband of Rebecca Mallet claiming defendant was involved with her. Defendant admitted having an extramarital affair with Rebecca Mallett, a married woman about 26 years of age. He promised not to see Rebecca Mallet again.
The plaintiff, who still loved the defendant and wanted the marriage to continue, agreed that the parties should stay together and engage in marriage counseling. Defendant only went to three sessions with the plaintiff. Plaintiff continued for one more session, then ceased going.
Although the defendant had promised not to see Rebecca Mallett again, he continued to do so. Plaintiff, who became upset at this, was unable to sleep and eat resulting in a great loss of weight. She asked defendant to leave the premises. Subsequently, plaintiff instituted this proceeding.
The defendant is most at fault for the breakdown of the marriage. Defendant's affair with Rebecca Mallett, though he claims it was not the cause of the marriage breakdown, certainly weakened any chance of reconciliation. The marriage has broken down irretrievably. Accordingly, a decree dissolving the marriage of the parties is ordered.
The plaintiff, who was born August 5, 1946, has a bachelor's degree from Keene State Teacher's College in New Hampshire and a master's degree from Eastern Connecticut State University in Willimantic, Connecticut. She earned the master's degree by attending classes in the evening while she was employed by the Town of Lisbon teaching the seventh and eighth grades at the Lisbon Public School. Plaintiff has taught at the Lisbon Public School for 21 years. Presently, her salary is about $46,878.52 per year. In addition, plaintiff receives about $50 per week from 30 shares she owns in Sunny Waters Mobile Park. Her total reported income on her 1994 federal tax return was $52,294. Defendant's Exhibit F.
Plaintiff is a member of Talents Unlimited, whose members are qualified to teach other teachers. On occasion, plaintiff has trained teachers in Canada and has taught at Sacred Heart University. However, presently, there does not CT Page 9442 appear to be any demand for such services.
Plaintiff has a pension plan with the Town of Lisbon presently valued at $103,290. She also has a $20,000 term life insurance policy from her employer which will terminate if she leaves her present employment.
Plaintiff's health, except for her weight loss resulting from her marital problems, is good. Her continued employment seems secure.
The defendant, who was born February 10, 1946, is a high school graduate. He has been employed for approximately 11 years as a bus driver for Southeast Area Transit and presently earns approximately $31,564 per year. The defendant does not have any pension benefits from his employment, but he does pay social security taxes (FICA). He also has life insurance coverage of $25,000 from his employment.
Previous to his present employment, plaintiff worked for the railroad and was also employed in construction work where he did some surveying. His health is good and his employment seems secure.
In 1969, the parties purchased their first home, which was paid for by plaintiff's first year salary. The house was subsequently sold for $46,000. In 1978, this sum was used to purchase the present marital residence jointly owned by the parties and located at and known as 382 New London Turnpike, Norwich, Connecticut.
After the defendant left, plaintiff spent $7,800 of her money to make necessary repairs to the marital residence. Presently, the residence is without any mortgage or liens and has a market value of $90,000. The parties also own two one week time shares located at 60 Broadway, West Yarmouth, Massachusetts, for which they paid $22,000, but which have a present value of $12,000.
During the marriage, the parties had an agreement that plaintiff would pay for food, household expenses, utilities, and clothing for herself and her children; that defendant would pay the mortgage, property taxes, heat; make repairs to the home, when needed; that they would keep separate bank accounts; and that defendant would establish a savings plan for both plaintiff CT Page 9443 and defendant from his income. Plaintiff further paid for unreimbursed medical expenses.
The defendant has assets of $109,371, excluding the real estate, the time shares and the $12,000 he used to refurbish the 1964 Dodge, consisting of the following:
 Chelsea Groton Savings Bank IRA value $ 24,000 Aetna Annuity value 49,812 Great American Life Ins. Annuity value 27,322 Norwich Pequot TFCU Savings 237 1986 BMW automobile 3,000 1964 Dodge 5,000 Life Insurance (from employment) --------
The plaintiff has assets of $160,097, excluding the real estate and the time shares, consisting of the following:
 3 Norwich Pequot TFCU Accounts value $ 1,677 30 shares Sunny Waters Mobile Home Park value 47,310 Teacher's Retirement value 103,290 1991 Toyota Camry automobile value 7,820 Term Life Insurance Policy (employment) --------
On July 1, 2007, after 26 1/2 years of service, plaintiff's teacher's retirement plan will pay her $2,721.20 per month. Defendant's Exhibit A. However, if her employment is terminated before July 1, 2007, plaintiff's monthly benefit would be less. Plaintiff cannot draw against her pension.
The plaintiff has a one-third interest in a $56,000 life insurance policy on her father. The defendant's mother has a bank account of approximately $84,000 on which the defendant's name has been added for his mother's benefit.
The plaintiff has listed debts on her financial affidavit totalling $22,334 excluding any attorney's fees. The defendant has debts listed on his financial affidavit totalling $5,570 excluding attorney's fees.
The court finds that the plaintiff has contributed more financially to the marriage than has the defendant. After considering the factors in Connecticut General Statutes §§ 46b-81 and 46b-82 and taking into account all of the above, CT Page 9444 the following orders are entered, which the court finds to be fair and equitable.
(1) No alimony is awarded to either party.
(2) The defendant shall transfer all his right, title and interest in the marital premises to the plaintiff within sixty (60) days of this decree. At that time, the plaintiff shall issue to the defendant a promissory note in the sum of $26,000, without interest, payable on or before July 1, 1996, or; upon the death or sale of the premises, whichever is the first to occur. Said note shall be secured by a first mortgage on said premises and shall provide, in addition to the usual provisions contained in mortgages on real property, the provision that, if said note is not paid by July 1, 1996, said note shall bear interest at 10 percent per annum and the principal and interest due thereon shall be amortized monthly over a ten-year period commencing August 1, 1996, until said note is paid in full.
(3) The plaintiff shall keep her teacher's retirement plan; the 30 shares of Sunny Waters Mobile Home Park; the Norwich Pequot Federal Teachers Credit Union accounts; the 1991 Toyota Camry automobile; the term life insurance on her life; the Boston Mutual Bond listed on her financial affidavit, all as listed on plaintiff's financial affidavit; and one week of the time share at West Yarmouth, Massachusetts.
(4) The defendant shall keep the Chelsea Groton Savings Bank IRA; the Aetna annuity and the Great American Life Insurance annuity; the Norwich Pequot Teachers Federal Credit Union savings account; the 1986 BMW and the 1964 Dodge automobiles, all as listed on defendant's financial affidavit and one week of the time share at West Yarmouth, Massachusetts.
(5) Each party shall pay the debts listed on their respective financial affidavits and hold the other harmless from any claim on said debts.
(6) Each party shall be responsible for their own attorney's fees.
Paul M. Vasington State Trial Referee CT Page 9445